PETER A. CONSIGLIO & others[1] vs. GEORGE CAREY.

Barnstable. December 3, 1980. — June 24, 1981.

Present: HALE, C.J., CUTTER, & ARMSTRONG, JJ.

*Real or Personal Property. Real Property,* Attachment of personalty.
*Personal Property,* Attachment to real estate. *Landlord and Tenant,*
Fixture. *View.*

A tenant who had purchased and installed fixtures in the rented premises
during the term of his tenancy was entitled to remove them before the
end of his tenancy where the fixtures could be removed without dam-
age to themselves and without material injury to the premises; as to
damage to the premises resulting from such removal, the tenant had
an obligation to restore the premises to the condition they were in
before the tenancy, reasonable wear and tear excepted. [136-140]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 3, 1979.

The case was heard by *Beaudreau, J.*

*John B. Hopkins* for the defendant.

*John W. Spillane* for the plaintiffs.

ARMSTRONG, J. During the summer seasons from 1975
through 1978, the defendant operated a restaurant called
Dorsie's Steak House in a woodframe building at 183 Main
Street in West Yarmouth. He paid the plaintiffs rents
which escalated from $4,500 the first year to $8,500 in 1978.
In the spring of 1979 the parties discussed the possibility of
purchase and sale and apparently arrived at an understand-
ing that the defendant would purchase the building and
roughly an acre of land (the plaintiffs owned twenty-six
acres) for $195,000. But the defendant then dragged his
feet, and on June 8, 1979, the plaintiffs' counsel wrote a let-
ter notifying the defendant, who had no written lease, that

---

[1] Robert E. O'Coin and Louis Iandoli.

the rent would be increased to $35,000 per month as of July 8, 1979. The plaintiff Consiglio testified that the purpose of the letter was to induce the defendant to go through with the purchase, but by early July the plaintiffs learned that the defendant was preparing to move the restaurant to another building roughly a mile away.

The plaintiffs then brought the present action to enjoin the defendant from removing the restaurant equipment from the premises. They were denied a temporary restraining order on July 3. The defendant was instead served with a short order of notice, and, in the interval before the hearing, he removed most of the restaurant equipment to his new location. On July 11, after hearing, the court enjoined the defendant from removing any other equipment. A trial was held in September, and the judge ruled that the defendant owned and had been entitled to take all of the equipment that he had removed from the premises between July 3 and July 11; that six major items of equipment which were claimed by the defendant but which remained on the premises were "trade fixtures affixed to the realty" and could not be removed by the defendant; and that the defendant should pay the plaintiffs $8,250 in addition to what they had already been paid as rent for 1979.

The defendant appealed from the judgment and contends that that portion of the judgment is erroneous which enjoined him from removing the six items of equipment. He does not contend that the determination of additional rental was erroneous. The plaintiffs did not appeal.[2]

The six items of equipment are a walk-in freezer, a compressor which supplies the cold air to the freezer, two air conditioners, a dishwasher, and a bar. The judge made no findings concerning the circumstances in which these items

---

[2] The plaintiffs contend in their brief that they were entitled to a larger rental award but state that they are "satisfied for the purposes of this appeal with the rental figure . . . of $8250, provided the Court's decision on other matters herein is sustained." Of course, not having appealed, the plaintiffs are not entitled to reconsideration of the amount of the rental in either event. *Mahoney* v. *Mahoney*, 5 Mass. App. Ct. 720, 726 (1977).

came to be on the premises, apparently because of his opinion, which is made explicit in his findings, that the decisive question was the manner in which the equipment items were attached to the building. The testimony at the trial, however, was specific as to the time and manner of acquisition of each such item. As none of that testimony was contradicted or questioned, but was, to the contrary, confirmed in part by the plaintiffs, we treat that testimony as accurate. Only one of the six contested items was on the premises when the defendant began his tenancy: namely, the dishwasher, which the defendant purchased from the prior occupant, Carl's Restaurant, Inc., along with many of the other items which the judge ruled the defendant had properly removed from the premises in July.[3] The defendant purchased the two air conditioners and installed them in two of the three window casings on the street side of the building. The units were large; their installation necessitated removal of the sash from each casing. The walk-in freezer and the compressor were purchased by the defendant from a restaurant supply company. The freezer was twelve feet high, too high to be brought into the building. It was installed at the back wall of the building on an insulated concrete slab. A hole was cut in the rear wall of the building to provide access to the freezer door. A plywood shell was erected around the freezer to protect it from the sun and weather. The freezer itself is "portable," in the sense that a person using only an "Allen set wrench" can break it down into panels for easy transportation and reassembly. The compressor, bought at the same time, is also located outside the building and is attached only to the freezer. The defendant built the bar in 1979, shortly before the dispute which led to his departure. The nature of its attachment to the building does not appear in the recorded evidence, but the judge, who took a view, made a general

---

[3] The items purchased from Carl's Restaurant, Inc., including the dishwasher, appear in a bill of sale dated May 5, 1975, introduced in evidence as an exhibit.

finding that each of the items in question is attached to the realty.

That finding would be open to question, as applied to certain of the items in dispute, if it purported to rest merely on the transcribed testimony. But findings which rest on a view are sometimes unassailable, unless the record is made to reflect the particular observations which underlie the findings. *Medford Trust Co.* v. *Priggen Steel Garage Co.*, 273 Mass. 349, 354 (1930). Contrast *Keeney* v. *Ciborowski*, 304 Mass. 371, 374 (1939). Here we have no record of the underlying observations; we assume for purposes of decision that they supported the general finding that the items are attached to, and part of, the realty. The question whether similar items were annexed, and therefore realty, or unannexed and therefore personalty, has generally been held to be one of fact. See *Smith* v. *Bay State Sav. Bank*, 202 Mass. 482, 485-488 (1909); *Walker Dishwasher Corp.* v. *Medford Trust Co.*, 279 Mass. 33, 35-36 (1932); *Bay State York Co.* v. *Marvix, Inc.*, 331 Mass. 407, 411 (1954).

A determination that the items are affixed to the realty does not, however, dispose of the case, as it might, for example, if the items had been installed by the owner of the realty, and the dispute was with a purchaser of the realty, or between the owner as mortgagor and a mortgagee. *Greene* v. *Lampert*, 274 Mass. 386 (1931). "Many articles annexed by a tenant can be removed by him which, if annexed by the owner, become part of the realty and pass under a deed or mortgage." *Smith* v. *Bay State Sav. Bank*, 202 Mass. at 485, and cases cited. At an early date it was "established by the cases, that things which the tenant has at his own expense affixed to the freehold for purposes of ornament or domestic convenience, or for purposes of trade, business or manufactures, may be removed by him before the expiration of his term. The right of removal depends upon the mode in which the thing to be removed is annexed to the freehold, and the effect which its removal would have upon the premises. It may be exercised in such a case, wherever it is not contrary to any prevailing usage, and

causes no material injury to the estate, and where the thing can be removed without losing its essential character or value as a personal chattel." *Hanrahan* v. *O'Reilly*, 102 Mass. 201, 203 (1869).[4] Other cases which recognize the general right of a tenant to remove fixtures installed by him before the end of the term of the tenancy include *Doty* v. *Gorham*, 5 Pick. 487, 489 (1827); *Gaffield* v. *Hapgood*, 17 Pick. 192, 193 (1835); *Wall* v. *Hinds*, 4 Gray 256, 270-273 (1855); *Guthrie* v. *Jones*, 108 Mass. 191 (1871); *McConnell* v. *Blood*, 123 Mass. 47, 49 (1877); *Noyes* v. *Gagnon*, 225 Mass. 580, 585 (1917); *Looney* v. *Trimount Theatres, Inc.* 282 Mass. 275, 277 (1933). See also *Richardson* v. *Copeland*, 6 Gray 536, 538 (1856).

That the cited cases are not notably recent is not an indication of their obsolescence but merely shows that settled law breeds little litigation. For more modern statements, see Restatement (Second) of Property, Landlord and Tenant § 12.2(4), Comments r and s, and Illustrations 28 and 29 (1977); 5 Am. Law of Property § 19.11 (Casner ed. 1952).

Applying these principles to the present case, we think it is clear that the items in dispute, except the dishwasher, are tenant's fixtures, having been installed by the defendant during his tenancy for the purpose to which he was putting the rented premises, and that they can be removed without damage to the items themselves and with only such damage to the premises as falls within the principles of *Doty* v. *Gorham, supra*; *Hanrahan* v. *O'Reilly, supra* at 203-204; and *Smith* v. *Bay State Sav. Bank*, 202 Mass. at 486-488. As to that damage, the defendant has an obligation to restore

---

[4] Analytically tenants' fixtures were regarded as real estate, rather than personalty, so long as they were annexed to the realty, but "[w]ithin certain limits" they could be converted back into personal property by the tenant by detaching them from the real estate. *Guthrie* v. *Jones*, 108 Mass. 191, 196 (1871). The distinction was of importance in early practice chiefly in the selection of the appropriate common law form of action. In *Guthrie* v. *Jones*, it was held that a tenant dispossessed by the landlord during the term of tenancy could not recover the value of his trade fixtures in an action of tort for conversion (trover), because the fixtures, although removable by the tenant, were not personalty.

the premises to the condition they were in before the tenancy, reasonable wear and tear excepted, and that obligation requires him to restore the sash which was removed to permit installation of the air conditioners, to remove the plywood shell and the foundation for the walk-in freezer (assuming that the plaintiffs desire this removal), and to restore the wall to its former condition. These obligations can be enforced by a requirement in the judgment that the defendant post security for their proper performance, see Restatement (Second) of Property § 12.2(4), Comment s, or they may be enforced in a separate action for damages.

The record does not enable us to determine whether the dishwasher is a tenant's fixture. It was purchased by the defendant from the prior tenant, Carl's Restaurant, Inc., but an officer of that corporation was not permitted to testify concerning its acquisition. It is unnecessarily speculative to attempt to infer that the dishwasher was installed by Carl's Restaurant, Inc., solely from the fact that it treated the dishwasher as its personal property by selling it to the defendant, when the matter may be made certain by direct evidence. If, on a rehearing, which need not extend beyond this question except in the discretion of the rehearing judge, it should be shown that the dishwasher was installed by Carl's Restaurant, Inc., and was thus removable by it during its tenancy (or, in the case of tenancy at will, within a reasonable time thereafter; see *Doty* v. *Gorham*, 5 Pick. at 489; 5 Am. Law of Property § 19.11, at 43 [Casner ed. 1952]), we think that it would retain its character as a tenant's fixture if sold during that time to the next tenant. Otherwise it would, after expiration of the time allowed, become the property of the landlord. *Natural Autoforce Ventilator Co.* v. *Winslow*, 215 Mass. 462, 463 (1913).

The judgment is reversed, and the case is remanded for further proceedings in accordance with this opinion.

*So ordered.*