In re LANDMARK LAND COMPANY OF OKLAHOMA, INCORPORATED, an Oklahoma Corporation, Debtor.

LANDMARK LAND COMPANY OF CAROLINA, INCORPORATED, a Delaware Corporation; Clock Tower Place Investments, Limited, a California Corporation; Landmark Land Company of California, Incorporated, a Delaware Corporation; Landmark Land Company of Florida, Incorporated, a Delaware Corporation; Landmark Land Company of Louisiana, Incorporated, a Louisiana Corporation; Landmark Land Company of Oklahoma, Incorporated, an Oklahoma Corporation, Plaintiffs–Appellees,

v.

RESOLUTION TRUST CORPORATION, as Conservator for Oaktree Federal Savings Bank, Defendant–Appellant,

Landmark Communities Committee, Incorporated, Intervenor,

Official Unsecured Creditors' Committee, Intervenor,

and

Oaktree Savings Bank, S.S.B., a Savings Bank Chartered by the State of Louisiana, Defendant,

United States Trustee, Party in Interest.

In re LANDMARK LAND COMPANY OF OKLAHOMA, INCORPORATED, a Delaware Corporation, Debtor.

LANDMARK LAND COMPANY OF CAROLINA, INCORPORATED, a Delaware Corporation; Clock Tower Place Investments, Limited, a California Corporation; Landmark Land Company of California, Incorporated, a Delaware Corporation; Landmark Land Company of Florida, Incorporated, a Delaware Corporation; Landmark Land Company of Louisiana, Incorporated, a Louisiana Corporation; Landmark Land Company of Oklahoma, Incorporated, an Oklahoma Corporation, Plaintiffs–Appellees,

v.

RESOLUTION TRUST CORPORATION, as Conservator for Oaktree Federal Savings Bank, Defendant–Appellant,

and

Oaktree Savings Bank, S.S.B., a Savings Bank Chartered by the State of Louisiana, Defendant,

United States Trustee, Party in Interest.

In re CLOCK TOWER PLACE INVESTMENTS, LIMITED, a California Corporation, Debtor.

LANDMARK LAND COMPANY OF CAROLINA, INCORPORATED, a Delaware Corporation; Clock Tower Place Investments, Limited, a California Corporation; Landmark Land Company of California, Incorporated, a Delaware Corporation; Landmark Land Company of Florida, Incorporated, a Delaware Corporation; Landmark Land Company of Louisiana, Incorporated, a Louisiana Corporation; Landmark Land Company of Oklahoma, Incorporated, an Oklahoma Corporation, Plaintiffs–Appellees,

v.

RESOLUTION TRUST CORPORATION, as Conservator for Oaktree Federal Savings Bank, Defendant–Appellant,

and

Oaktree Savings Bank, S.S.B., a Savings Bank Chartered by the State of Louisiana, Defendant,

United States Trustee, Party in Interest.

In re LANDMARK LAND COMPANY OF CALIFORNIA, INCORPORATED, a Delaware Corporation, Debtor.

LANDMARK LAND COMPANY OF CAROLINA, INCORPORATED, a Delaware Corporation; Clock Tower Place Investments, Limited, a California Corporation; Landmark Land Company of California, Incorporated, a Delaware Corporation; Landmark Land Company of Florida, Incorporated, a Delaware Corporation; Landmark Land Company of Louisiana, Incorporated, a Louisiana Corporation; Landmark Land Company of Oklahoma, Incorporated, an Oklahoma Corporation, Plaintiffs–Appellees,

v.

RESOLUTION TRUST CORPORATION, as Conservator for Oaktree Federal Savings Bank, Defendant–Appellant,

and

Oaktree Savings Bank, S.S.B., a Savings Bank Chartered by the State of Louisiana, Defendant,

United States Trustee, Party in Interest.

In re LANDMARK LAND COMPANY OF OKLAHOMA, INCORPORATED, an Oklahoma Corporation, Debtor.

LANDMARK LAND COMPANY OF OKLAHOMA, INCORPORATED, an Oklahoma Corporation, Landmark Land Company of Carolina, Incorporated, a Delaware Corporation; Clock Tower Place Investments, Limited, a California Corporation; Landmark Land Company of California, Incorporated, a Delaware Corporation; Landmark Land Company of Florida, Incorporated, a Delaware Corporation; Landmark Land Company of Louisiana, Incorporated, a Louisiana Corporation, Plaintiffs–Appellees,

v.

RESOLUTION TRUST CORPORATION, as Conservator for Oaktree Federal Savings Bank, Defendant–Appellant,

and

Oaktree Savings Bank, S.S.B., a Savings Bank Chartered by the State of Louisiana, Defendant,

United States Trustee, Party in Interest.

In re LANDMARK LAND COMPANY OF FLORIDA, INCORPORATED, a Delaware Corporation, Debtor.

LANDMARK LAND COMPANY OF CAROLINA, INCORPORATED, a Delaware Corporation; Clock Tower Place Investments, Limited, a California Corporation; Landmark Land Company of California, Incorporated, a Delaware Corporation; Landmark Land Company of Florida, Incorporated, a Delaware Corporation; Landmark Land Company of Louisiana, Incorporated, a Louisiana Corporation; Landmark Land Company of Oklahoma, Incorporated, an Oklahoma Corporation, Plaintiffs–Appellees,

v.

RESOLUTION TRUST CORPORATION, as Conservator for Oaktree Federal Savings Bank, Defendant–Appellant,

and

Oaktree Savings Bank, S.S.B., a Savings Bank Chartered by the State of Louisiana, Defendant,

United States Trustee, Party in Interest.

Nos. 91–2715 to 91–2720.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1992.

Decided Aug. 18, 1992.

As Amended Oct. 5, 1992.

Rex R. Veal, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., argued (G. Patrick Watson, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., Richard T. Aboussie, Associate Gen. Counsel, Mark P. Hileman, Acting Sr. Counsel, P. Matthew Sutko, Sr. Atty., Resolution Trust Corp., Washington, D.C., James S. Crockett, Jr., Edward E. Scher, Mays & Valentine, Richmond, Va., Lawrence W. Johnson, Jr., Adams, Quackenbush, Herring & Stuart, Columbia, S.C., on brief), for defendant-appellant.

Patrick Michael Duffy, McNair Law Firm, P.A., Charleston, S.C., argued (Michael M. Beal, McNair Law Firm, P.A., Charleston, S.C., John L. Douglas, R. Neal Batson, Dennis J. Connolly, David E. Brown, Jr., Alston & Bird, Atlanta, Ga., Michael Paul Kirschner, Hastie & Kirshner, Oklahoma City, Okl., Richard F. Broude, Mayer, Brown & Platt, New York City, Barnaby Zall, Williams & Jenson, Washington, D.C., on brief), for plaintiffs-appellees.

J. Mark Jones, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., argued (Donald H. Stubbs, Thornwell F. Sowell, George B. Cauthen, on brief), for intervenors.

Before HALL and LUTTIG, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

The Resolution Trust Corporation ("RTC"), as conservator of Oak Tree Federal Savings Bank ("New Oak Tree"), appeals the judgment of the district court enjoining it from exercising ownership rights over New Oak Tree's subsidiaries by initiating or convening a shareholders' meeting while the subsidiaries are under the protection of the bankruptcy court. We reverse and remand.

## I.

The predecessor of New Oak Tree, Oak Tree Savings Bank, S.S.B. ("Oak Tree"), was the sole shareholder of appellee Clock Tower Place Investments, Ltd. ("Clock Tower"), and Clock Tower owned the majority of stock in the five appellee Landmark Land companies.[1] For several years, the Landmark Land companies invested profitably in real estate using Oak Tree's lower cost funds to finance their operations. The Landmark Land companies develop, own, and manage resort residential communities, such as Kiawah Island and Palm Beach Polo and Country Club. Along with golf courses, the developments include tennis and polo facilities to which memberships are sold.

In August 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (1989) (to be codified in scattered sections of 12 U.S.C.). The primary purpose of FIRREA is to provide affordable home mortgage financing, establish organizations to resolve failed thrifts, and dispose of the assets of failed thrifts. H.R.Rep. No. 101–54I, 101st Cong., 1st Sess. 291, 307, *reprinted in* 1989 U.S.C.C.A.N. 86, 103. FIRREA is also intended to improve the distinction between the regulatory and insurance functions of the thrift industry by (1) ensuring a well capitalized and independent thrift insurance fund, (2) enhancing thrift industry regulation by providing for stronger supervisory oversight of the industry under the Department of Treasury; establish stronger capital standards for thrifts; and, enhance the regulatory enforcement powers of the depository institution regulatory agencies to protect against fraud, waste and insider abuse.

---

1. The five subsidiary companies are: Landmark Land Company of Oklahoma, Inc., Landmark Land Company of Carolina, Inc., Landmark Land Company of California, Inc., Landmark Land Company of Florida, Inc., Landmark Land Company of Louisiana, Inc.

*Id.* at 307–08, *reprinted in* 1989 U.S.C.C.A.N. at 103–04.

Pursuant to FIRREA, Oak Tree and its subsidiaries undertook a five-year plan to sell real estate. In addition, the Office of Thrift Supervision ("OTS") required Oak Tree to change its investment patterns and institute accounting changes designed to more accurately reflect the value of its assets. Eventually, sales of real estate and sales of club memberships in the residential communities declined, and Oak Tree became insolvent.

On October 11, 1991, when receivership of the insolvent Oak Tree by the OTS was imminent, Clock Tower and its subsidiaries (Clock Tower and its subsidiaries hereinafter referred to as the "subsidiaries") petitioned for relief under Chapter 11 of the Bankruptcy Code. On that same day, the subsidiaries sought and received, *ex parte*, a temporary restraining order from the United States Bankruptcy Court for the District of South Carolina against Oak Tree to prevent it from calling a shareholders' meeting to elect new members to their boards of directors.

Two days after the subsidiaries filed their petitions in bankruptcy, the OTS appointed the Resolution Trust Corporation ("RTC") to act as receiver for Oak Tree pursuant to 12 U.S.C.A. § 1464(d)(2)(E) (West Supp.1992). The RTC then organized, and the OTS chartered, New Oak Tree. Pursuant to a purchase and assumption agreement, New Oak Tree purchased all of the RTC's right, title and interest in Oak Tree's assets, including its wholly owned subsidiaries. The OTS then appointed the RTC as conservator for New Oak Tree.

After its appointment as conservator of New Oak Tree, the RTC immediately moved the district court to lift the TRO to allow it to call a shareholders meeting and exercise its ownership rights over the subsidiaries. The district court denied RTC's motion to dissolve the TRO, and, instead, converted the TRO into a preliminary injunction. The district court's action was based primarily on its conclusion that the RTC intended to obtain control of the debtor subsidiaries in order to withdraw them from bankruptcy and sell their assets to the detriment of creditors. *In re Landmark Land Co. of Oklahoma, Inc.*, 134 B.R. 557, 559 (D.S.C.1991).

The court held that although it could not restrain the RTC from disposing of its ownership interest in the subsidiaries, it had jurisdiction to prevent "abuse of shareholder rights and to prevent interference with the debtors' rights to reorganize." *Id.* at 559–60. Accordingly, the court restrained the RTC from "calling or initiating a shareholder's meeting which might result in a change of management, directors, officers, personnel or procedures of any of the Plaintiffs [and from] exercising any right as a shareholder of the Plaintiffs, or otherwise to change the management, directors, officers, personnel or procedures of the Plaintiffs ... during this reorganization case...."

The RTC appeals the preliminary injunction.

## II.

The issue raised in this case is whether the district court has jurisdiction to enjoin the RTC, acting as conservator of a failed thrift, from assuming control of the thrift's subsidiaries that are under Chapter 11 protection of the bankruptcy court.

The RTC argues that Congress enacted 12 U.S.C.A. § 1821(j) (West 1989) to absolutely prohibit *all* courts from restraining or affecting the RTC's right to manage, control, and dispose of the assets of failed thrifts, including wholly-owned subsidiaries. Section 1821(j) states: "Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." The RTC argues that Congress intended, by enacting this statute, to absolutely prohibit interference by the courts in order to allow the RTC to

exercise its exceptionally broad powers in resolving the savings and loan crisis.

The broad powers delegated to the RTC begin with its succession, upon its appointment as conservator or receiver, to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution...." § 1821(d)(2)(A)(i). The power to control an institution's assets includes the power to "conduct all business of the institution," § 1821(d)(2)(B)(i), "perform all functions of the institution ... consistent with the appointment as conservator or receiver," § 1821(d)(2)(B)(iii), and "preserve and conserve the assets and property of such institution." § 1821(d)(2)(B)(iv). The objective of the RTC is to get as much money as it can from the sale or other disposition of the failed institutions or their assets. § 1441a(b)(3)(C)(i) (West Supp.1992).[2]

As successor in interest to the stock of Clock Tower, the RTC maintains that its right to call a shareholders' meeting to elect new management is within its rights as owner and conservator and beyond the injunctive power of the federal courts, based on § 1821(j). It insists that its mandate to "expeditiously" resolve the thrift crisis by controlling and collecting the assets of failed institutions must be unhampered by injunctive actions in the federal courts.

The subsidiaries stress that the RTC's authority, while extensive, pertains to administering the affairs of insolvent thrifts within the scope of Title 12. Furthermore, the purpose of Chapter 11 is reorganization; whereas, the focus of FIRREA is liquidation. Consequently, while the RTC may sell its ownership interest in non-thrift subsidiaries, it has no authority to act as conservator or receiver and liquidate the assets of business corporations in Chapter 11 that are owned by a thrift institution in conservatorship.

The district court implicitly agreed, finding that if the RTC were allowed to take control of the subsidiaries for the purpose of liquidating the assets, irreparable harm would result to the debtors' estates and other creditors. In particular, the RTC would likely "withhold, conceal, transfer and otherwise dispose of the property of these [bankruptcy] estates in order to evade, interfere with, and avoid the administration of the property" and, consequently, the assets "would more likely than not be permanently lost and placed beyond the reach of the [subsidiaries] and the creditors of these estates whose claims already may not be able to be paid in full...." *In re Landmark Land Co. of Carolina, Inc.,* No. 2 91 3135 1 (D.S.C. Oct. 31, 1991).

However, FIRREA creates some remedies for aggrieved parties. FIRREA establishes an extensive administrative framework and provides for claims of aggrieved parties to be filed with and expeditiously considered by the RTC. § 1821(d)(3)–(11). While FIRREA limits the jurisdiction of the federal courts to review administrative determinations, § 1821(d)(5)(E), it does provide jurisdiction in the federal courts to entertain actions for money damages. § 1821(d)(6). In addition, FIRREA establishes a limited equitable remedy by providing that, within thirty days after the appointment of the RTC as conservator, an insured state savings association or bank may seek an order requiring the RTC to remove itself. § 1821(c)(7).

Notwithstanding the provisions established in FIRREA, the district court held that it could prevent the RTC from using its ownership position to withdraw the subsidiaries from Chapter 11 bankruptcy for its own benefit. The RTC, as conservator of New Oak Tree, is not only the sole shareholder of the Clock Tower (indirectly the majority owner of the Landmark Land subsidiaries), it is also its major creditor.

---

2. Other extraordinary powers given to the RTC as receiver or conservator include the power to repudiate contracts that it determines are burdensome, § 1821(e)(1), and the power to enforce any contract that terminates by reason of insolvency or appointment of a conservator or receiver. § 1821(e)(12)(A).

The district court found that the value of the subsidiaries' assets would likely be significantly reduced as a result of the change of management and concluded that it was necessary to enjoin the RTC from calling a shareholders' meeting to elect directors. Therefore, the district court held that while the RTC's authority under Title 12 is broad, it has jurisdiction under Title 11 to enjoin the RTC from taking action detrimental to the bankruptcy estates.

The subsidiaries cite *In re American Continental Corp.*, No. Civ. 89–1231, PHX–RMB, B–89–3117, PHX–SSC (D.Ariz. Oct. 30, 1989), as a case that reconciled Titles 11 and 12. In that case, wholly-owned subsidiaries of an insolvent thrift filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code the day before FSLIC was appointed conservator for the thrift. Three days after its appointment, FSLIC voted the stock of the thrift's subsidiaries to establish new boards of directors and install new management teams. RTC subsequently succeeded FSLIC as conservator, and, as holder of the stock in the corporate subsidiaries, moved to dismiss the subsidiaries' Chapter 11 cases. The district court denied the RTC's motion to dismiss. We are of the opinion that the *American Continental* court interfered with legitimate statutory functions of the RTC, and we decline to follow it.[3]

In FIRREA, Congress established a comprehensive statutory scheme within which the RTC could exercise its broad powers to reorganize and collect assets for the benefit of depositors (and taxpayers). Congress made no provision for protecting some assets, such as subsidiary corporations, from being controlled and/or disposed of as the RTC deems necessary to maximize the re-

turn for depositors. On the contrary, the RTC was given the power to take such action as may be "necessary to put the insured depository institution in a sound and solvent condition...." § 1821(d)(2)(D). Significantly, the RTC is a government agency that is held accountable to Congress and the executive branch of government for its performance in maximizing the return on properties and minimizing the cost to the United States Treasury.

Furthermore, Congress intended the RTC to "exercise all the usual incidents of ownership." H.R.Rep. No. 101–54I, 101st Cong., 1st Sess. 291, 359, *reprinted in* 1989 U.S.C.C.A.N. 86, 155. Considering the unique mandate given to the RTC to resolve the monumental crisis in the thrift industry, the RTC cannot be considered just another creditor of a company in bankruptcy, where it owns 100% of the company's stock by virtue of its conservator status.

The RTC cites several cases for the proposition that general statutory language of the Bankruptcy Code is superseded by the more specific anti-injunctive language found in other Titles of the Code. *See, e.g., In re Heritage Village Church and Missionary Fellowship, Inc.*, 851 F.2d 104, 105 (4th Cir.1988) ("There is no express provision in the Bankruptcy Code indicating congressional intent that the Code supersede the Anti–Injunction Act;" consequently, the anti-injunction statute precludes injunction of IRS revocation of tax-exempt status of debtor.); *Board of Governors of the Fed. Res. Sys. v. MCorp Financial, Inc.*, —— U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) (specific anti-injunctive language in 12 U.S.C. § 1818(i)(1) is not qualified or superseded by the general provision governing bankruptcy proceedings); *Coit In-*

---

**3.** Other cases cited by the subsidiaries are distinguishable because the injunctions issued in those cases only when the plaintiff alleged that the RTC was acting beyond the scope of its statutory authority as receiver or conservator. *See Cummings Properties Management, Inc. v. F.D.I.C.*, 786 F.Supp. 144 (D.Mass.1992) (court not barred by anti-injunction provision to determine whether a particular action of receiver

within statutory power); *Gross v. Resolution Trust Corp.*, No. 92–0286, 1992 WL 55741, 1992 U.S.Dist.LEXIS 3041 (E.D.Pa. March 13, 1992) (anti-injunction provision of FIRREA does not preclude temporary restraining order to determine authority of RTC to specific action) (relying on *Rosa v. Resolution Trust Corp.*, 938 F.2d 383 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991)).

*dep. Joint Venture v. Federal Sav. & Loan,* 489 U.S. 561, 574, 109 S.Ct. 1361, 1369, 103 L.Ed.2d 602 (1989) (anti-injunction provision prohibits courts from restraining or affecting FSLIC's exercise of receivership "powers and functions" granted elsewhere). The anti injunction provisions applied in the above cases are similar to § 1821(j). Therefore, by analogy, these cases are very persuasive.

The comprehensive scheme of FIRREA indicates Congress' intent to allow the RTC full rein to exercise its statutory authority without injunctive restraints imposed by bankruptcy courts or district courts in other proceedings. *See Carlton v. Firstcorp,* 967 F.2d 942, 946 (4th Cir.1992) (comprehensive exclusive scheme governing oversight of financial institutions indicates Congress intended to exclude other methods of interfering with the regulatory action).

Numerous other courts have considered the scope of § 1821(j) in other contexts and determined that it precluded injunctive action when the RTC was acting within the scope of its authority as receiver or conservator. *E.g., Telematics Int'l, Inc. v. NEMLC Leasing Corp.,* 967 F.2d 703 (1st Cir. June 22, 1992) (federal court lacks jurisdiction to enjoin FDIC from attaching certificate of deposit to which it acquired a secured interest as receiver); *Rosa v. Resolution Trust Corp.,* 938 F.2d 383 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991) (non-monetary provisions of injunction prohibiting termination of ERISA pension plan impermissibly encroached on RTC's statutory power as receiver and conservator); *Glenborough New Mexico Associates v. RTC,* 802 F.Supp. 387 (D.N.M.1992) (non-monetary relief sought in breach of contract and misrepresentation action precluded by anti-injunction and anti-attachment provisions of FIRREA).

Because of Congress' mandate to resolve the emergency crisis existing in the savings and loan industry and because of authoritative interpretation of similar anti-injunction statutes in analogous contexts, we conclude that the district court was without jurisdiction to enjoin the RTC, acting as conservator, from exercising its ownership rights over the subsidiaries of New Oak Tree. The RTC is well within its statutory authority to take control of the Clock Tower subsidiary in which it holds a 100% ownership interest, without interference by the bankruptcy or district court. Through Clock Tower, the RTC can then control the Landmark subsidiaries.

Congress has delegated the responsibility of resolving failed thrifts to the RTC, and resolution of a failed thrift requires control over all of the thrift's assets. Because the anti-injunction provision specifically precludes equitable interference, the district court may not prevent the RTC from exercising its lawful ownership rights based on the court's determination that current management is best suited to rehabilitate the thrift's bankrupt subsidiaries.

Accordingly, the case is remanded to the district court with instructions to dissolve the preliminary injunction.

REVERSED AND REMANDED WITH INSTRUCTIONS.